## Axelrod-Beacon Dental Laboratory, Inc., et al. v. City of Philadelphia et al.

*William M. Gerber*, for plaintiffs.

*Abraham L. Shapiro*, for defendants.

SLOANE, J., December 2, 1938. — Certain dental laboratories in Philadelphia (and the Philadelphia Dental Laboratory Association) have filed this bill in equity to restrain and enjoin defendants, the City of Philadelphia, and Frank J. Willard, Receiver of Taxes, from collecting from these plaintiffs the city sales tax imposed by the City Sales Tax Ordinance of February 8, 1938, as amended February 24, 1938.

Plaintiffs say they are not subject to the sales tax, because (they aver) :

1. They do not sell to dentists; they "supply to the dentists a highly-skilled dental mechanical service" and "any tangible personal property thereby transferred to the dentist is merely incidental to the skilled services rendered and the material represents a very small percentage of the total bill rendered"; and because

2. The transfer of the tangible personal property to the dentist is for resale by the dentist to his patient.

The answer of defendants denies the right to an injunction and avers that the tax is properly applicable to these dental laboratories.

The issue is: Are dental laboratories subject to the city sales tax?

It was agreed that though the bill prayed for a *preliminary* injunction, the hearing be considered a final hearing. Testimony was taken accordingly.

Upon bill, answer, and proofs we make the following

### Findings of fact

1. Each plaintiff (except the Dental Laboratory Association of Philadelphia) is engaged in the dental laboratory business in the City of Philadelphia and is known as a dental laboratory.

2. The Dental Laboratory Association of Philadelphia, one of the plaintiffs, is a nonprofit corporation of Pennsylvania, created for the mutual benefit and protection of the dental laboratories doing business in Philadelphia.

3. The City of Philadelphia, one of the defendants, is a municipal corporation and a city of the first class.

4. Frank J. Willard, the other defendant, is Receiver of Taxes for Philadelphia.

5. The "City Sales Tax Ordinance of Philadelphia" is an ordinance passed by the Council of the City of Philadelphia on February 8, 1938, and amended by two ordinances on February 24, 1938, and June 10, 1938, respectively.

6. (*a*) Section 2 of the "City Sales Tax Ordinance of Philadelphia" (as amended*), provides in part, as follows:

"Sect. 2. Imposition of Tax. From and after the passage of this ordinance, and ending on December thirty-first, nineteen hundred and thirty-eight, there shall be paid a tax of two per centum upon the amount of every sale in the City of Philadelphia, if delivery be made within the City of Philadelphia, of:

"(*a*) Tangible personal property sold at retail, . . .".

(*b*) Clause (*e*) of section 1 of the ordinance provides:

"The word 'sale' or 'selling' means any transfer of title or possession or both, exchange or barter, license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, and may include the rendering of any service specified in Section 2 of this ordinance";

(*c*) Clause (*f*) of section 1 of the ordinance provides:

"The words 'tangible personal property' means corporeal personal property".

(*d*) Clause (*g*) of section 1 of the ordinance defines a retail sale as follows:

"A 'retail sale' or 'sale at retail' means a sale to a customer, or to any person for any purpose other than for resale in the form of tangible personal property";

(*e*) Section 3 of the ordinance as amended February 24, 1938, provides as follows:

"Collection of Tax from Purchaser. The vendor shall collect from the purchaser a tax of 2 per centum on all sales and services taxable under this ordinance, and in computing the amount of the tax fractions less than one-fourth of a cent of tax shall be disregarded and fractions more than one-fourth of a cent of tax shall be computed as one cent."

7. (*a*) Each plaintiff (except Philadelphia Dental Laboratory Association) is in the business of making and

---

* This section approved June 9, 1938, as amended.

supplying to and for dentists for dentists' patients, artificial teeth (or dentures), crowns, bridges, lingual and palatal bars, inlays, and other dental-mechanical restorations and appliances made of gold and other metals, and of rubber, porcelain, vulcanite, and other trade-named materials. (For convenience, we refer hereafter to all or any of the foregoing as dental-mechanical restorations.)

(*b*) For the conduct of their respective businesses and the accomplishment of their work, plaintiffs engage, and as individuals in their respective concerns are themselves, highly skilled mechanics. They engage also less skilled employes and the usual office employes such as bookkeepers and office boys.

8. Each dental-mechanical restoration is made specifically from a mold or impression or cast of the individual patient's mouth or part of it, supplied by the dentist to the dental laboratory.

9. Each dentist with slight adjustment or correction fits the particular dental-mechanical restoration to the mouth of the particular patient.

10. Plaintiffs issue to dentists from time to time "price lists" setting forth with itemization the prices of the various types of these dental-mechanical restorations. These prices are governed largely by competition in the general dental-laboratory business, and the dentist knows at least the minimum price of a particular dental-mechanical restoration. This minimum price is uniform, even though skill is a very necessary part of the accomplished article, and even though the form and shape of each dental-mechanical restoration varies with, and conforms to the needs of each particular patient.

11. The dental laboratory sells to the dentist, and the dentist purchases the particular dental-mechanical restoration or appliance at a stipulated price, depending upon the type or kind needed for the patient's mouth, as shown by the mold, cast, or impression, and the dentist places the appliance in the patient's mouth with the necessary adjustments to assure proper treatment, ad-

justment, correction, or restoration of the lost or defective tooth or teeth.

12.(a) Dentistry is a profession of long standing and the dentist furnishes professional services to his patient.

(b) A dentist is not engaged in the business of selling dental-mechanical restorations to his patients and the inclusion of such work for the patient is part of the dentist's treatment and in the course of the fulfillment of his professional services.

## Discussion

We have already stated that the question given us to answer is whether or not dental laboratories are subject to the city sales tax. They claim not. They strive earnestly to have us reach the conclusion that they serve the dentist, and that what the dentist pays them is in great part for the skill and services rendered the dentist and only in small part for the cost of the article furnished the dentist.

That is their first of two arguments. To support it, the contentions are that great skill and artisanship is required in making dentures and other dental-mechanical appliances and restorations, and that the cost of the metal and other materials is but a small proportion of the price of the finished article. We may admit both contentions without affecting our conclusion. Admittedly, peculiar skill is required in fashioning a denture, but so is there unique expertness and aptitude required in the artistry of portrait painting. Admitted also is the fact that the cost of the material in a denture is but a small fraction of the sales price, but so it is in the portrait. The paint and brush may cost little, and the finished likeness or picture be of value beyond reckoning. Yet nobody denies that the sale of a picture or portrait or likeness is within the purview of the city sales tax.

It was shown at the hearing in the instant case that the cost of materials of brick and other products admittedly subject to the tax is in small proportion to the sales price. There is also a comparison with the custom tailor from

whom you order a garment to your own individual taste and order. Expertness and craftsmanship is required of the tailor. Yet the suit so made and delivered to the customer for a price, admittedly, is a transaction of sale subject to the city sales tax.

Our own court said recently: "In many businesses, the cost of the material used is but a small portion of the total cost of the final product. This fact cannot affect the nature of the transaction whereby the product is marketed." Philadelphia Association of Linen Suppliers v. City of Philadelphia et al., C. P. No. 2, June term, 1938, no. 4796, in equity, a case in which our Court of Common Pleas No. 4 held the linen suppliers subject to the tax imposed by the same ordinance. To hold otherwise would lead to complexity and perhaps hopeless difficulty in determining taxables. There might have to be consideration of various items of cost to sales price of different and various products. The result might well be confusion. And with such confusion there would be arbitrariness and lack of proper uniformity, with too wide a discretion in the taxing authorities in determining what is and what is not subject to the tax. It was certainly not council's intent that such considerations determine taxability or freedom from the tax. We have precedent from other jurisdiction to go by: People ex rel. v. Graves et al., 243 App. Div. 652, approved (without opinion) in 268 N. Y. 648. There the New York City Sales Tax ordinance, almost identical with our own city sales tax ordinance, was held applicable to the making of photoengravings from photographs furnished by the customer even though the cost of the metal used was not more than two percent of what the customer paid for the finished product.

And see People ex rel. v. Graves et al., 246 App. Div. 130 (1936), where under the same New York City Sales Tax ordinance, sales of designs to cloth manufacturers rendered on tracing paper were held taxable, though the cost of the paper and work involved represented a small fraction of the price charged. And certainly there is skill

and expertness required in making designs for cloth. See also Cusick et al. v. Commonwealth et al., 260 Ky. 204.

Lee v. Griffin, 1 Best & Smith 272, 121 Eng. Repr. 716, 717, an older English case, is applicable. There it was to be decided whether or not a contract for the manufacture of a set of artificial teeth was a contract for the sale of goods within the terms of the English Statute of Frauds, 3 Eng. Stat. at L. 385 (1676), whether the contract "could be treated as one for work and labour, or whether it was a contract for goods sold and delivered." Said Crompton, J.:

"The main question which arose at the trial was, whether the contract in the second count could be treated as one for work and labour, or whether it was a contract for goods sold and delivered. The distinction between these two causes of action is sometimes very fine; but, where the contract is for a chattel to be made and delivered, it clearly is a contract for the sale of goods . . . but I certainly do not agree to the proposition that the value of the skill and labour, as compared to that of the material supplied, is a criterion by which to decide whether the contract be for work and labour or for the sale of a chattel. Here, however, the subject matter of the contract was the supply of goods. The case bears a strong resemblance to that of a tailor supplying a coat, the measurement of the mouth and fitting of the teeth being analogous to the measurement and fitting of the garment." And in the same case Justice Blackburn said (p. 718):

"On the other point, the question is whether the contract was one for the sale of goods or for work and labour. . . . In the present case the contract was to deliver a thing which, when completed, would have resulted in the sale of a chattel; in other words, the substance of the contract was for goods sold and delivered. I do not think that the test to apply to these cases is whether the value of the work exceeds that of the materials used in its execution; for, if a sculptor were employed to execute a

work of art, greatly as his skill and labour, supposing it to be of the highest description, might exceed the value of the marble on which he worked, the contract would, in my opinion, nevertheless be a contract for the sale of a chattel."

There are instances where the supply of materials is incidental to services performed and the transaction was held not subject to the sales tax in New York City. Such is the case of In the Matter of Mendoza Fur Dyeing Works, Inc., v. Taylor, etc., 272 N. Y. 275 (1936). There, one, in the business of dyeing and processing fur skins owned by dealers and manufacturers, was held not subject to the tax. Said the Court of Appeals of New York (p. 279):

"Obviously, the fur dyer is not engaged in the business of reselling chemicals and dye stuffs as such or as tangible personal property. Its business is that of rendering skilled services and performing labor upon the property of others. The fact that in so doing it is required to use and consume chemicals and dye stuffs is incidental to the services rendered." But such is not the instant case.

The fact remains that the laboratory sells the finished product to the dentist at a stipulated price known to and circulated amongst dentists by price lists and otherwise.

Plaintiffs come forward with this second argument. They urge that assuming a sale by the laboratory of the denture to the dentist, the dentist in turn sells it to his patient; that, therefore, the laboratory's sale is not a "retail sale", because the article is sold to the dentist for resale to the patient, and articles sold for resale are not subject to the tax. We do not agree. A dentist does not sell to his patient. He is a man of profession subject to statutory qualifications and observation. His relationship to his patient is not that of vendor and vendee (even in part), but that of doctor and patient—a close relationship requiring the skill and expertness that come with a concentrated background of education, training, and qualification. The patient certainly doesn't think of his

dentist as one who sells him a false tooth or a crown or inlay. The patient hopefully seeks his dentist for treatment and professional care and attention. Placing yourself in a dentist's chair is far from the mart of purchaser and sale, bargain, and delivery. It may well be that the conclusion is a set of false teeth. But you don't consider it a purchase, but rather as the treatment concluded upon; and the consideration paid the dentist is his fee for services though there may be included in the dentist's bill the cost of bridge or plate. The bridge is a step in the dentist's professional ministrations. What has been said of the doctor in one case may be apt for the dentist in the case at hand.

"When the doctor gives a prescription he is taking an added step in his professional ministrations. . . . In each of these cases the writing is but an operation in the progress of a personal duty and of a larger undertaking. It is a mere movement forward in the work, not a sale. However, if the doctor were to prepare prescriptions for various diseases and sold them upon the demand and upon the judgment of the buyer . . . the doctor . . . would be engaged in a business of selling things having substance, and form, and worth": People ex rel. v. Graves et al., 246 App. Div. 130, 131.

"The subject of tax in the instant ordinance is the transaction of sale": Blauner's, Inc., et al., v. Philadelphia et al., 330 Pa. 342, 345. The word "sale" is comprehensively defined in the ordinance. The transfer of title to the bridge, plate, or other appliance for a price or consideration is a transaction of sale and purchase between laboratory and dentist. The article that the dental laboratory makes for the dentist with great artisanship and with little cost as to material is the subject of a transaction of sale with the dentist who buys it for a price. That to us is the situation in its simplicity. The city sales tax ordinance therefore applies and the articles so sold are subject to the tax.

We repeat what our Supreme Court said in declaring that Council of the City of Philadelphia had the power and authority to levy this tax in the manner and form in which it was imposed—"We have nothing to do with the wisdom of the tax or with the purpose of its levy": Blauner's, Inc., et al., v. Philadelphia et al., supra. Ours is the duty to determine its inclusiveness of the particular situation presented by this case. Our conclusion is that the tax ordinance applies, and we come to the following

### Conclusions of law

1. The sales tax ordinance of Philadelphia, as amended, imposes a tax upon any sale, that is, upon any transfer of title or possession or both of corporeal personal property to any person for a consideration for any purpose other than resale in the form of tangible personal property.

2. The subject of tax in the ordinance is the transaction of sale.

3. Plaintiffs (except Philadelphia Dental Laboratory Association) are engaged in the business of selling dentures and other dental-mechanical restorations and appliances to dentists for dentists' patients.

4. The transactions between plaintiffs, or any of them (except the Philadelphia Dental Laboratory Association), and dentists are transactions of sale, involving a transfer of title to a particular article for a consideration or price.

5 (a). Dentistry is a calling or profession distinct in its character from that of the retailer who sells tangible personal property in the pursuit of trade.

(b) A dentist does not sell dentures or other dental-mechanical appliances to his patient.

(c) The relationship between a dentist and patient is one of professional ministration and service.

6. The transactions between plaintiffs (except Philadelphia Dental Laboratory Association), and the dentists

are subject to the tax imposed by the City Sales Tax Ordinance of Philadelphia.

7. Plaintiffs are not entitled to the relief prayed for in their bill of complaint.

### Decree nisi

And now, December 2, 1938, upon consideration of the foregoing cause, it is ordered, adjudged, and decreed:
1. That the bill be dismissed.
2. That each party bear its or his own costs.